## GREEN *v.* THE PEOPLE.

1. Under the statute of Colorado an assault with intent to murder is felony.

2. It is error to render a verdict in a charge of felony, the defendant being absent and under confinement in jail; his right to be present cannot be waived by counsel.

*Error to the District Court of Clear Creek County.*

THE case is stated in the opinion.

Mr. M. S. TAYLOR, for plaintiff in error.

BRAZEE, J. This was an indictment against the defendant below for an assault with intent to murder.

The indictment was presented on the 16th day of December, 1874. Upon the same day, capias issued for the defendant, and on that day the sheriff, returned that he had his body in jail. On the next day the defendant demurred to the indictment. The demurrer was overruled, and on the 25th day of December, 1874, the defendant was arraigned, plead not guilty, put himself upon the country, and the district attorney *similiter;* a jury was thereupon impaneled and sworn ; verdict guilty.

The defendant was not present when the verdict was received ; he was then in jail, as the record shows.

It is *inter alia* assigned for error that the record shows that the prisoner was not present when the verdict was rendered by the jury.

It is claimed by the plaintiff in error that the crime charged against the defendant is a felony. In considering whether it was necessary that the defendant should have been present when the verdict was rendered, we must determine whether this claim is well founded or not. Our statute does not define a felony, but it is claimed the offense charged is felony at common law. By chapter 16, Rev. Stat., the common law of England, so far as applicable, and all acts and statutes of the British Parliament, made in aid of,

or to supply the defects of the common law, prior to the fourth year of James the I., so far as applicable (with certain exceptions, not necessary to notice), are made the rule of decisions to be in full force in this Territory until repealed.

James the I. was proclaimed king of England on the 24th of March, A. D. 1603. The common law then, which we have adopted, is the common law of England, as amended by acts of Parliament applicable to our condition, and in force on the 24th day of March, A. D.     , fourteen years before the landing of the pilgrims, and a year and a month before Capt. John Smith founded Jamestown, Va.

At that early day Coke and Bacon were bitter rivals in politics and practice at the bar; neither Sir Mathew Hale nor Sergeant William Hawkins had then been born, nor had the star chamber been abolished, and trial by wager of battle was lawful.

The common law was then emerging from the gloom of black letter, the mysteries of Norman-French, and the intricacies of the old feudal law, and beginning to assume under Coke and Bacon that system and symmetry which Hale and Hawkins afterward assisted in developing, and Blackstone perfected, a hundred years later, in the king's English.

The common law was not in the early days of James, what enlightened jurists have since made it.

The case of Sir Walter Raleigh furnishes an illustration of a difference in the application of the law at least. Upon a written acquisition, uncorroborated by witness or circumstance, without being confronted with his accuser, Raleigh was convicted of high treason by the verdict of a jury, upon which he was consigned to prison, and finally brought to the block.

The felonies of that day appear to have been numerous and peculiar. Besides felonies at common law, viz.: murder, larceny, robbery, arson and rape, a few of the many other high crimes created by statute may be mentioned as

illustrating the law of those old times. For a jesuit, semi-nary priest or ecclesiastic, born in the realm, to return to it, was high treason; persistent refusal to attend church after being admonished was felony, without the benefit of clergy; selling a horse to a Scotchman and stealing hawks were also felonies; and stealing goods above the value of twelve pence was punished with death, and worked the forfeiture of estates, and the corruption of blood.

Much difficulty has been found in finding out the law of those ancient times applicable to the case at bar, to deter-mine the grade of the offense charged in the indictment.

Says one old writer, the ancient common law of England provided with such anxiety for the personal safety of the subject, that every act done against another, which might in its consequences have proved fatal to his existence, was construed to be felonious. Of this there are several instances in the year-books of Edward the II. and Edward the III. In the reign of Edward the IV. the maxim that *voluntas repu-tabatur pro facto* began to grow obsolete; and the offense of assault with intent to murder was considered a high misdemeanor, only punishable at discretion. 1 Hawk. P. C. (8th ed.) 111.

Thus the law remained for more than one hundred years after the third year of James, and until the reign of George the III.

Colorado having adopted the common law as it was dur-ing the third year of James the First, by it, assault with intent to murder is a high misdemeanor, unless the common law has been changed in this respect by the 48th section of our Criminal Code.

The indictment under consideration is found under that section which is substantially as follows: "An assault with intent to commit murder, rape, robbery or larceny, shall subject the offender to confinement in the penitentiary for a term not less than one, nor more than fourteen years. An assault with a deadly weapon, instrument, or other thing, with an intent to inflict upon the person of another

a bodily injury where no considerable provocation appears," etc., " shall be judged to be a high misdemeanor, and any person thereof duly convicted shall be fined in a sum not exceeding $2,000 and imprisoned not exceeding one year in the county jail."

The minimum penalty for assault with intent to murder is one year in the penitentiary, and the minimum penalty for assault with intent to do bodily injury may be merely nominal — one day in jail and six cents fined — while the maximum penalty for these offenses are almost as widely apart.

The turpitude involved in the former is as much greater than in the latter, as the intent maliciously to murder by a secret deadly thrust exceeds in depravity the intent to disable an adversary by a hasty unnecessary blow with a deadly weapon, given upon slight provocation in sudden combat.

The latter by the statute is expressly made a high misdemeanor, while the former is not by the statute classed either with felony or any grade of misdemeanor.

Assault with intent to murder involves the highest depravity, and the legislature having imposed a much greater penalty for its punishment, we conclude it is as much higher offense in law than assault with intent to do bodily harm, as the depravity it manifests and its punishment exceeded the punishment to be inflicted for, and the *quo animo* that characterizes assaults with intent to injure. The latter ,as we have seen, is made a high misdemeanor. Between high misdemeanor and felony there is no grade of crime known to the law. It follows by necessary implication that the statute having made assault with intent to murder a higher crime than a high misdemeanor, it is of the next grade higher, and a felony.

When the verdict was rendered, the defendant was in jail; he had a right to be present then, but of this right he has been deprived.

This right is one that cannot be waived by counsel;

whether the defendant when under bail may waive this right by remaining voluntarily absent when the verdict is rendered, we do not consider nor decide. It is settled that it is error to deprive a party charged with felony, of his right in this respect. *State* v. *France*, Cooper, Tenn. 343 ; Id., Overton, 434–5 ; 1 Bishop's Cr. Pro. ( 1st ed.) 688, and cases ; *Price* v. *Commonwealth*, 18 Penn. 6 Harris, 103 ; *Stubbs* v. *The State*, 49 Miss. 716 ; *The People* v. *Perkins,* 1 Wend. 91 ; *Dougherty* v. *The Commonwealth*, 69 Penn. 286.

Some objections are urged against the indictments, but they are untenable. The recent repeal of the statute authorizing proceedings by information render it unimportant to discuss the question whether in this particular case the prosecution should have been by indictment or information.

The verdict and judgment are reversed, a new trial is granted, and the cause is remanded.

*Reversed.*